In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00252-CR**
_____

**TOMMY JACK LEWIS ARMSTRONG, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 14-20458**

**MEMORANDUM OPINION**

Arguing that the evidence was insufficient to prove that he committed aggravated assault, Tommy Jack Lewis Armstrong[1] appeals his conviction, requests that it be reversed, and argues that the Court should render a judgment of

---

[1] The indictment indicates that Tommy Jack Lewis Armstrong is also known as Tommy Jack Armstrong.

acquittal.[2] *See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011). We hold that the evidence is sufficient to show that Armstrong committed aggravated assault. Therefore, we overrule Armstrong's sole issue and affirm the trial court's judgment.

The testimony from the trial shows that Armstrong swerved his truck toward Chris's[3] truck while the trucks were beside each other and traveling on an interstate highway. According to Armstrong, he was justified in following the other truck and pulling alongside it, and he never used his truck in a manner that was intended to cause Chris an injury. The State argues that the evidence about the manner Armstrong used his truck allowed the jury to infer that Armstrong used the truck in a manner to threaten Chris with an injury.

---

[2] Armstrong's sentence was enhanced to a first-degree felony based on his admission that he had previously been convicted of another felony, burglary of a habitation, a second-degree felony. *See* Tex. Penal Code Ann. § 12.42(b) (West Supp. 2016) (authorizing an enhanced penalty if it is shown on the trial of a second-degree felony that the defendant had previously been convicted of a felony other than a state jail felony). Throughout the opinion, we cite the current version of the Texas Penal Code, as any amendments to the provisions that are cited are not relevant to the issues Armstrong raises in his appeal.

[3] "Chris" is a pseudonym that is used to conceal the victim's actual name. *See* Tex. Const. art. I, § 30 (granting crime victim's "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

Based on the indictment in Armstrong's case, the State was required to prove that Armstrong intentionally and knowingly threatened Chris with imminent bodily injury by using or exhibiting a deadly weapon—an automobile[4]—in a manner capable of causing serious bodily injury in committing the assault. *See* Tex. Penal Code Ann. § 22.01(a)(2) (West Supp. 2016), § 22.02(a)(2). Depending on the manner in which they are used, automobiles and trucks are capable of being used as deadly weapons. *See Tyra v. State,* 897 S.W.2d 796, 798 (Tex. Crim. App. 1995); *see also Callison v. State,* 218 S.W.3d 822, 827 (Tex. App.—Beaumont 2007, no pet.). In the charge submitted to the jury in Armstrong's case, the term "deadly weapon" was defined as: "(1) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (2) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." This is the same definition for "deadly weapon" that is found in the Penal Code. Tex. Penal Code Ann. § 1.07(17) (West Supp. 2016). To prove that Armstrong acted intentionally or knowingly, the State had to show either that it was Armstrong's "conscious objective or desire to engage in the

---

[4] The indictment states that Armstrong was driving an automobile and the evidence presented by the State indicates that Armstrong was driving a truck. However, the indictment's allegation that Armstrong used an automobile does not represent a variance between the indictment's allegations and the proof, as the term automobile is considered to include vehicles such as trucks. *See Nichols v. State,* 242 S.W.2d 396 (Tex. Crim. App. 1951).

conduct or cause the result[]" or that Armstrong was aware of the nature of, or circumstances surrounding, his conduct. *See* Tex. Penal Code Ann. § 6.03(a), (b) (West 2011).

Six witnesses testified in the guilt-innocence phase of Armstrong's trial. However, only two of the witnesses, Chris and Armstrong, had personal knowledge about the circumstances surrounding whether Armstrong used his truck in a manner that threatened Chris with an imminent bodily injury. In resolving what it believed occurred in the chase, the jury apparently chose to accept Chris's account, in which Chris indicated that Armstrong had swerved toward him as the vehicles were traveling beside each other at high rates of speed on the highway.

During the trial, Chris testified that while he was driving home one evening, he saw a man and a woman arguing in the street. According to Chris, after he saw the man strike the woman with his fist, the woman ran toward his truck, and he signaled to the woman that she should get in. Chris explained that he did not know who the woman was, but she was sobbing. Chris indicated that the man ran after the woman as she was running toward his truck, and he testified that he saw the man attempt to prevent the woman from getting into his truck. The man damaged Chris's passenger door as he tried to prevent the woman from leaving with Chris.

Chris explained that he then drove to another street in the neighborhood, but that Armstrong got into his own truck, and found them. According to Chris, when

4

he spotted Armstrong's truck, he drove out of the neighborhood, and a chase ensued. The chase led from the neighborhood to the westbound lanes of Interstate-10, and ended near the city limits in Beaumont. Chris explained that during the chase, Armstrong pulled beside his truck, where he saw Armstrong "[d]riving, swerving, [and] yelling[]" while the trucks were traveling at speeds of ninety miles-per-hour. Chris testified that while the trucks were side-by-side, Armstrong "swerved at us, which made me very nervous." Chris indicated during his testimony that the way Armstrong was driving scared him: he thought Armstrong was going to hit his truck. According to Chris's testimony, Armstrong swerved toward him, Chris then swerved to his right, sped up to get away, and ultimately attained a speed of about 100 miles-per-hour. The chase ended when the police, who Chris had called shortly after the chase began, stopped Armstrong's truck.

According to Armstrong, who testified in his own defense, he never swerved toward Chris as the trucks were traveling side-by-side on the highway. Armstrong also testified that he followed Chris's truck because he did not recognize or know Chris, and he wanted to make sure that his girlfriend, with whom he had been arguing, was okay. Armstrong admitted that on two occasions, he pulled beside Chris's truck in an effort to get Chris to pull over, but he denied ever swerving his truck at Chris in an attempt to cause a wreck. Armstrong also denied that he was attempting to injure Chris by running Chris's truck off the road.

5

The testimony from the police officers involved in the chase indicates they had not taken up the pursuit of Armstrong's truck until he was on Interstate-10. According to the testimony of the officers, when Armstrong noticed they were trying to pull him over, Armstrong pulled onto the shoulder of the highway and stopped. The evidence before the jury included video footage captured by a camera in one of the police cars that stopped Armstrong's truck. However, the video footage did not include the portion of the chase where the two trucks were traveling beside each other.

In his appeal, Armstrong contends that the evidence showing the movements of his truck did not allow the jury to rationally conclude that he used his truck in a manner to threaten Chris with an imminent bodily injury. *See* Tex. Penal Code Ann. § 22.02(a)(2). To determine whether sufficient evidence was before the jury to allow it to find Armstrong guilty of aggravated assault, we view all of the evidence in the light that is the most favorable to the jury's verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (applying the standard identified in *Jackson v. Virginia*, 443 U.S. 307 (1979), to Texas cases raising sufficiency challenges); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 318-19). Under the

6

*Jackson* standard, "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Temple,* 390 S.W.3d at 360. In this role, the jury may choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Further, the jury is permitted to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Temple*, 390 S.W.3d at 360. When the record supports conflicting inferences, we presume that the jury resolved those conflicts in favor of the verdict and therefore, defer to that determination. *Id*.

In reviewing whether sufficient evidence is in a record to support a defendant's conviction, we consider all of the evidence in the record, regardless of whether it was properly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In considering the inferences the jury made in resolving any conflicts in the evidence, the jury is allowed to consider both direct and circumstantial evidence, as both may be equally probative of the defendant's guilt. *Temple*, 390 S.W.3d at 359. Additionally, we note that "'circumstantial evidence alone can be sufficient to establish guilt.'" *Id*. (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In a circumstantial evidence case, each fact need not point directly and independently to the defendant's guilt, it is enough if the jury's conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Temple,* 390 S.W.3d at 359 (quoting *Johnson v. State*,

7

871 S.W.2d 183, 186 (Tex. Crim. App. 1993)); *Hooper*, 214 S.W.3d at 13. After we have reviewed the evidence and given proper deference to the factfinder's role, we are required to uphold the verdict unless we conclude that based on the evidence, a rational factfinder must have had reasonable doubt as to any of the essential elements of the offense at issue in the appeal. *See Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

Based on the *Jackson* standard, and given Chris's account regarding the chase, the jury was entitled to reject Armstrong's testimony that he never swerved toward Chris's truck, he never intended to cause Chris an injury, and he never intended to cause a wreck. *See Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978) (holding that a jury may choose to believe or not believe all, some or none of the testimony of the witnesses who testify in a trial); *see also Guevara v. State,* 152 S.W.3d 45, 49-50 (Tex. Crim. App. 2004) (allowing a jury to infer intent from circumstantial evidence including the actions, words, and conduct of the appellant). In Armstrong's case, the jury could rationally believe Chris's testimony that Armstrong swerved his truck toward Chris's truck while the trucks were traveling beside each other at high speeds, that Chris swerved his truck away from Armstrong's truck to avoid a collision, and that Armstrong intentionally swerved toward Chris to convey to Chris that if he refused to stop, Armstrong would use his truck to force Chris off the road. Given the speeds involved when Armstrong's

8

conduct occurred, the jury's inference that Armstrong used his truck in a manner to threaten Chris with an imminent bodily injury was reasonably based on the testimony, as viewed in the light most favorable to the verdict.

We hold the evidence authorized the jury to find Armstrong intentionally used his truck in a manner that placed Chris in imminent fear of a bodily injury. *See Smith v. State,* 316 S.W.3d 688, 696 (Tex. App.—Fort Worth 2010, pet. ref'd) (upholding aggravated assault conviction based on the manner the defendant used his truck). We overrule Armstrong's sole issue. The trial court's judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 10, 2016
Opinion Delivered October 19, 2016
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

9