In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-065 CR


____________________



DONALD ROYCE CALLISON, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 258th District Court


Polk County, Texas


Trial Cause No. 18466






 OPINION 


 A jury convicted Donald Royce Callison, Jr. of aggravated assault of a public servant
and found that Callison used a deadly weapon in committing the offense. See Tex. Pen.
Code Ann. §§ 22.02 (a)(2), (b)(2)(B) (Vernon Supp. 2006). (1) The trial court assessed
punishment, which was enhanced, at forty years' confinement in prison. Callison appeals. (2) 
We affirm.

Background


 While traveling southbound on Highway 59, Texas Department of Public Safety
Troopers Chris Callas and Joseph Wood detected a car traveling at 108 miles per hour. The
troopers turned on their flashing lights and chased the car being driven by Callison. Callison
left the highway and turned onto a county road leading into a small subdivision. At times
going off the road, Callison drove approximately one mile to a dead end where he left his car
and ran toward a wooded area. Both troopers chased Callison and ordered him to stop, but
he kept running. 

 Although Trooper Callas caught Callison and restrained him, Callison broke free. He 
ran back to his car and got in. As the troopers approached the car, Trooper Callas pointed
his gun at Callison and ordered him to stop. Callison ignored the command and started the
car. Trooper Callas re-holstered his gun, jumped partially into the open driver's window,
and punched Callison. With Trooper Callas hanging through the window, Callison backed
his car toward the patrol car and rammed its front end. Callison then shifted gears and drove
forward. Trooper Callas, while still hanging from Callison's car window, pulled the keys
from the car's ignition causing the car to stop. Subsequently, the troopers used double
handcuffs to restrain Callison. 

 The record reveals that Trooper Callas received injuries from the altercation with
Callison. Callison bit Callas while Callas attempted to stop Callison's car, and Callas bruised
his right side when he hit the door post. Callas took prescription antibiotics and pain
medications because of his injuries. 

 Callison presents two main arguments. First, he complains that the State's notice that
it would seek to enhance his sentence was untimely and inadequate. Second, he contests the
sufficiency of the evidence to sustain the jury's deadly weapon-finding. (3) 

Enhancement Notice


 In his first four issues, Callison attacks the State's notice of its intent to seek enhanced
punishment. Callison asserts: (1) he was denied his due process right to meaningful notice
(Issue one); (2) the notice of intent was inadequate to amend the indictment (Issue two); (3)
the notice of intent was not provided within the statutorily required time before trial (Issue
three); and (4) the notice of intent did not comply with article 28.11's requirements (Issue
four).

 The State served Callison with its Notice of Intent to Seek Enhanced Punishment on
November 29, 2005. The notice stated that Callison was convicted of felony robbery in
1992. Callison's trial began on December 5, 2005.

 A defendant is entitled to notice of a prior conviction that the State intends to use for
enhancement. Brooks v. State, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997). While proper
notice of intent to enhance punishment must be timely, the notice need not be pled in the
indictment to be sufficient, so long as it is pled "in some form" prior to trial. Id. at 34. 
Proper notice informs the defendant that the State is seeking a greater penalty than it would
seek absent the enhancement and therefore serves to allow the defendant to show possible
defenses, such as a mistake in identity or that the prior convictions never became final. 
Hollins v. State, 571 S.W.2d 873, 876 (Tex. Crim. App. 1978).

 With respect to meaningful notice of the State's enhancement claim, the Texas Court
of Criminal Appeals recently held that the Brooks notice requirement has constitutional
origins. Villescas v. State, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006). However, the
Villescas Court distinguished between the notice that is required by statute, and the notice
that is constitutionally required, and "disavowed" any "special significance" of a ten-day
notice period. Id. While recognizing that statutory notice periods "are designed to safeguard
constitutional notice rights in a manner that is easy for the parties to follow and for courts to
apply," the Court concluded these notice periods do not control in a review for constitutional
error. Id. Instead, reviewing courts determine "whether constitutionally adequate notice was
given." Id. Villescas further rejected the lower court's conclusion that the State must give
notice before trial. Id. Rather, Villescas explained that "due process does not even require
that the notice be given before the guilt phase begins, much less that it be given a number
[of] days before trial." Id. (citing Oyler v. Boles, 368 U.S.448, 82 S.Ct. 501, 7 L.Ed 2d 446
(1962)). Thus, if "a defendant has no defense to the enhancement allegation and has not
suggested the need for a continuance in order to prepare one, notice given at the beginning
of the punishment phase satisfies the federal constitution." Villescas, 189 S.W.3d at 294.

 Callison argues that Villescas does not control our due process analysis because it was
decided after the date of Callison's offense and should not be applied retroactively. Because
Villescas does not state it is retroactive, Callison asserts it does not eliminate the ten-day
requirement of Sears v. State, 91 S.W.3d 451, 455 (Tex. App.-Beaumont 2002, no pet.). In
Sears, this Court declined to determine "a certain time frame" for notice but found that an
enhancement notice given ten days before trial was presumptively reasonable. 91 S.W.3d
at 455.

 Were we to accept Callison's argument that Villescas is not to be applied retroactively,
we would be required to overlook the general rule: though the Court may limit retroactive
application if it chooses to do so, judicial decisions normally are retroactive. Proctor v.
State, 967 S.W.2d 840, 845 n.5 (Tex. Crim. App. 1998). However, if a decision deprives
persons of "fair warning" of the conduct that will give rise to particular criminal penalties,
the decision may not operate retroactively. Id. But, a decision may apply retroactively if it
does not alter an offense's definition, range of punishment, or substantive defenses. Id.

 Because the court in Villescas did not choose to limit its retroactive application, we
likewise decline to do so. Further, as applied to Callison, the application of the rationale in
Villescas does not alter: (1) the definition of Callison's alleged offense (aggravated assault
of a public servant); (2) the offense's range of punishment; or (3) Callison's available
defenses. Compare Villescas, 189 S.W.3d at 294 and Proctor, 967 S.W.2d at 845 n.5. Thus,
we find that Villescas is applicable to our determination of whether Callison's due process
rights were violated.

 In determining whether the State provided Callison with sufficient notice, we note 
the record does not suggest that Callison's defense was impaired by the notice he received
of the State's intent to enhance his sentence. At trial, Callison did not object to the notice;
instead, he pled true to the enhancement allegation. See Villescas, 189 S.W.3d at 295. He
did not request any additional time to prepare his defense after receiving notice of the State's
intent to enhance his punishment, as was his option under art. 28.10(a) of the Code of
Criminal Procedure. Further, he did not complain of surprise or assert that he was
unprepared to contest the enhancement allegation. In addition, when Callison's pen packet
was introduced as an exhibit, his counsel did not object. (4) After considering these facts and
circumstances, we conclude that Callison was not denied his due process right to sufficient
notice of the State's enhancement claim. Issue one is overruled.

 In issues two, three, and four, Callison complains the State provided inadequate notice
of its desire to amend the indictment and that the State failed to comply with statutory
requirements regarding notice of its intent to seek an enhanced penalty. The State contends
that these errors, if any, were not preserved. 

 We agree. Callison never raised any objections at trial or in post-trial motions about
the State's failure to comply with the statutory notice requirements or of the State's attempt
to amend his indictment. To the extent any error existed, he waived it. See Tex. R. App. P.
33.1(a). Issues two, three, and four are overruled.

Use of Vehicle as Deadly Weapon


 In issues eight and nine, Callison claims that the evidence is both legally and factually
insufficient to show that he used a deadly weapon. 

 Pursuant to section 22.02(a)(2) of the Texas Penal Code, the State indicted Callison
for aggravated assault on a public servant. To prove its case, the State had to show that
Callison: (1) intentionally or knowingly threatened a person that he knew to be a public
servant who was lawfully discharging an official duty; and (2) used or exhibited a deadly
weapon during the commission of the assault. See Tex. Pen. Code Ann. §§ 22.01(a)(2),
(b)(1); 22.02(a)(2). 

Standard of Review


 When reviewing the legal sufficiency of the evidence, we determine whether, after
viewing the evidence in a light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Cates v.
State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (citing Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). To be legally sufficient to sustain a deadly
weapon finding, the evidence must show that: (1) the alleged deadly weapon meets the
statutory definition; (2) the defendant used or exhibited the deadly weapon while committing
the crime for which he was convicted; and (3) other people were actually endangered. Cates,
102 S.W.3d at 738.

 In a factual sufficiency review, we view all of the evidence in a neutral light and ask
whether a jury was rationally justified in finding guilt beyond a reasonable doubt. See
Watson v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). To reverse a case on a factual
sufficiency challenge, we must be able to say, with some objective basis in the record, that
the great weight and preponderance of the evidence contradicts the jury's verdict. Id. at 417. 

 The Penal Code defines "deadly weapon" as "anything that in the manner of its use
or intended use is capable of causing death or serious bodily injury." Tex. Pen. Code Ann.
§ 1.07(a)(17)(B) (Vernon Supp. 2006). "A motor vehicle may become a deadly weapon if
the manner of its use is capable of causing death or serious bodily injury. Specific intent to
use a motor vehicle as a deadly weapon is not required." Drichas v. State, 175 S.W.3d 795,
798 (Tex. Crim. App. 2005) (en banc) (citations omitted). 

 Callison argues that there is a "complete absence of serious bodily injury, the proof
of which is a necessary comp[o]nent of proof of the elements of a 'deadly weapon.'"
However, to sustain a "deadly weapon" finding, the applicable statutes do not require that
the victim must have suffered a "serious bodily injury." Rather, the definition of deadly
weapon only requires that an object be "capable of causing death or serious bodily injury." 
Tex. Pen. Code Ann. § 1.07(a)(17)(B). It does not require that an injury actually occur. See
id. 

 In this case, the evidence shows the danger in which Callison placed Trooper Callas
due to the manner in which Callison drove his vehicle. Not only did Callison refuse to stop
the car when Trooper Callas was hanging out of the driver's window, Callison rammed the
patrol car and drove forward again while Trooper Callas was in a vulnerable position. The
jury could rationally conclude that, as used by Callison, the car was capable of causing death
or serious bodily injury. 

 Because all of the elements required to establish a deadly weapons finding are present,
the evidence is legally sufficient. See Cates, 102 S.W.3d at 738. The car as used in this case
meets the statutory definition of "deadly weapon." See Tex. Pen. Code Ann. §
1.07(a)(17)(B); Cates, 102 S.W.3d at 738. Further, Callison used the car while committing
the crime for which he was convicted - aggravated assault of a public servant. See Cates,
102 S.W.3d at 738. Finally, Trooper Callas was in actual danger because of Callison's use
of the car. See id. We find the evidence is legally sufficient to show that Callison used a
"deadly weapon." See id.; see Drichas, 175 S.W.3d at 798. Issue eight is overruled. 

 The evidence is also factually sufficient to show that Callison used a deadly weapon. 
Trooper Callas presented substantial testimony about Callison's use of his car. While
Callison testified that he was not trying to hurt anyone and that he was just trying to get
away, Callison does not deny that he drove the car while Trooper Callas was half inside the
window or that he backed into the patrol car while Trooper Callas was in the same dangerous
position. Thus, a neutral view of the evidence shows that the jury was rationally justified in
concluding that Callison used a deadly weapon while assaulting Trooper Callas. See Watson,
204 S.W.3d at 415. Issue nine is overruled.

 Accordingly, all of Callison's issues are overruled and the trial court's judgment is
affirmed.

 AFFIRMED. 

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on October 25, 2006

Opinion Delivered March 14, 2007

Publish

Before Gaultney, Kreger, and Horton, JJ.
1. Though section 22.02 was amended subsequent to commission of the offense, no
changes were made to the provisions pertinent to this appeal.
2. Callison does not appeal his conviction or sentence related to count two, assault on
a public servant. Callison pled guilty to this second count and received a twenty-year prison
sentence. However, Callison appealed his conviction on count three, evading arrest. That
appeal is addressed in a separate opinion issued by this Court in Cause No. 09-06-064 CR.
3. Callison withdrew issues 5, 6, and 7 after the reporter's record of the sentencing
hearing was filed. Therefore, we do not consider them.
4. The facts here are substantially different from those in Sears. The Sears appellant
objected to the notice of enhancement, requested a continuance, and pled "not true" to the
enhancement allegation. 91 S.W.3d at 453-54.