# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00437-CR

---

**Rick Allen Selman, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-18-1067-B, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant, Rick Allen Selman, Jr., challenges his conviction by a jury of aggravated robbery, a first-degree felony.  *See* Tex. Penal Code § 29.03.  Selman argues in three issues that insufficient evidence supports the conviction, that he was entitled to a jury instruction on the lesser-included offense of theft, and that he received ineffective assistance of counsel.  We affirm the district court's judgment of conviction.

## BACKGROUND[1]

The State charged appellant over an incident that took place on July 16, 2018, at the HEB gas station in Buda.  Kristen Rosado testified that she went to the gas station on the way to work.  She parked with the passenger's side of the vehicle facing the pump, pulled a credit

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in the opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it.  *See* Tex. R. App. P. 47.1.

card out of her purse, and walked around to the gas tank. She left her purse—which contained a 9mm handgun—and wallet inside the vehicle.

As Rosado was operating the gas pump, appellant pulled up "very fast" in his vehicle and parked so that his driver's side door faced her. Rosado testified that she saw appellant "creep[] across the gap between my car and his," open her driver's-side door, and grab her purse. Rosado ran around the vehicle and confronted him as he was standing up. Appellant took off running with Rosado following. Rosado testified that she caught up to appellant at his car and "grabbed him by the throat." They struggled briefly until appellant "shimmied down inside of his car and got into the driver's seat." Rosado testified that he immediately "threw the car into drive and took off with me attached to him and the car."

Appellant then drove out of the gas station and down a row of the HEB parking lot. Rosado testified that her feet were dragging on the ground and that it "felt like a cheese grater." Realizing that she had almost fallen under the car, Rosado lifted her feet off the ground and placed them against the door while holding onto the top of the door with her left hand; her right hand remained on appellant's neck. Rosado testified that appellant stopped midway down the row, turned around to look at her, and said "Bitch, let go." Appellant "took off again" while "slamming [Rosado's] arm in the door" multiple times. Realizing he was heading for the exit to the highway, Rosado "ripped [her] arm out of the door" and dropped to the ground.

The jury heard testimony from two people who saw appellant driving with Rosado caught in his door: Alice Kvien and Kelly Sears. Kvien testified that she heard Rosado screaming for help and saw her "dragged alongside" a car. She was "concerned that [Rosado] was going to get dragged under the car." Sears testified that she also heard the screams and saw Rosado trapped in the door of a moving vehicle.

2

Several members of the Buda Police Department responded to the 911 call. Officer Alfred Erdman testified that he observed "injuries to both feet, knees, tops of [Rosado's]—tops of her leg, her lower leg," and injuries on both arms. Brackenridge Elkins, a firefighter-paramedic with the Buda Fire Department, evaluated her at the scene. He testified that Rosado had "lacerations and swelling and some bruising," "road rash on her extremities,"[2] and "asphalt debris" around the wounds. Elkins cleaned out her wounds, bandaged them, and administered fentanyl to help with the pain. Rosado testified at trial that she still feels pain from the injury four years later.

The case was tried to a jury over two days in April 2022. At the charge conference, the district court asked appellant's counsel if he was requesting an instruction on a lesser-included offense. Counsel responded: "I'm requesting theft as a lesser." The request for a theft instruction was denied and counsel timely objected to its omission.[3] The jury found appellant guilty of aggravated robbery and found that he had used a deadly weapon, his motor vehicle. At a later sentencing hearing, appellant pleaded true to a single enhancement paragraph alleging failure to appear, and the district court sentenced him to forty years' imprisonment. *See id.* § 12.32. This appeal followed.

## DISCUSSION

Appellant argues in three issue that there is insufficient evidence to support his conviction, that the district court erred by refusing his request for an instruction on the lesser-

---

[2] Elkins defined road rash as "indications the skin came in contact with the road while the patient was being moved."

[3] Although counsel did not specify, we presume he sought an instruction on Class A misdemeanor theft. *See* Tex. Penal Code § 31.03(e)(3).

3

included offense of theft, and that his trial counsel was ineffective for not requesting an instruction on the lesser-included offense of robbery.

**Sufficiency of the Evidence**

To assess the sufficiency of the evidence supporting a conviction, "we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard accounts for the jury's responsibility "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* The jury is the "sole judge of the credibility of the witnesses and may choose to believe all, some, or none of the testimony presented." *Id.* at 762. In considering a claim of evidentiary insufficiency, we do "not sit as the thirteenth juror" and may not substitute our judgment for the jury's. *Id.* Our role on appeal is limited to determining "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017).

We measure the sufficiency of the evidence against the hypothetically correct jury charge for the case. *Garcia*, 667 S.W.3d at 762. The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (citing *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019)). A hypothetically correct charge for this

4

case would require the State to prove that appellant committed robbery as defined by section 29.02 of the Penal Code and used or exhibited a deadly weapon. *See* Tex. Penal Code § 29.03(a)(2). A person commits robbery if, "in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property," he "intentionally, knowingly, or recklessly causes bodily injury to another." *Id.* § 29.02(a)(1).

Appellant first argues that there in insufficient evidence that he caused Rosado to suffer bodily injury while in the course of committing theft. He asserts that the theft was complete when Rosado "initiated the contact by grabbing Appellant by the throat, causing Appellant to grab her with one hand" and that she did not suffer any injury until he "tried to enter his car and leave" and she "continued to hold onto Appellant, causing her arm to be caught in the door as he drove away." The State responds that "in the course of committing theft" includes fleeing after committing the offense.

We agree with the State. The Penal Code defines "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in *immediate flight after the attempt or commission of theft.*" *Id.* § 29.01(1) (emphasis added). The court of criminal appeals has defined "immediate" as "[o]ccurring without delay; instant," "[n]ot separated by other persons or things," or "[h]aving a direct impact; without an intervening agency." *Sweed v. State*, 351 S.W.3d 63, 69 n.5 (Tex. Crim. App. 2011). Rosado testified that she confronted appellant as he was standing up with her purse, that she chased him to his car when he fled, and that he immediately drove off. The jury could rationally conclude that appellant was in immediate flight from the commission of theft when he caught Rosado's arm in the door of his car and dragged her across the parking lot. *See id.*; *Zagone v. State*, 565 S.W.3d 366, 371 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (deciding jury could rationally conclude

5

defendant was in "immediate flight" because "from the time [defendant] attempted to take [the victim's] motorcycle to the time he pulled the knife on [another victim], [defendant] was engaged in one continuous criminal episode without any intervening events").

Next, appellant challenges the jury's finding that he used or exhibited a deadly weapon, his motor vehicle, during the commission of the offense. The Penal Code defines a deadly weapon as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B). To support a deadly weapon finding, there must be evidence that the defendant drove the vehicle in a manner that "was capable of causing death or serious bodily injury." *Couthren v. State*, 571 S.W.3d 786, 790 (Tex. Crim. App. 2019); *see Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009) ("[e]xamin[ing] whether a defendant's driving was reckless or dangerous" during commission of offense (footnotes omitted)). Appellant argues that the evidence is insufficient because "the only injury contact with the car caused" was the bruising on Rosado's arm, and there was "no testimony" that "closing a car door on someone's arm [could] cause severe injury or death." Her remaining injuries were "caused by the dragging of her body parts on the asphalt" rather than contact with the vehicle. The State responds that there is ample evidence showing he operated the vehicle in a dangerous manner.

We again agree with the State. Appellant focuses on which of Rosado's injuries resulted from "contact" with his vehicle, but the issue is whether he "used" the vehicle in a manner "capable of causing death or serious bodily injury." *See* Tex. Penal Code § 1.07(a)(17)(B); *Couthren*, 571 S.W.3d at 790. It is undisputed that appellant slammed the door on her arm and drove through the parking lot with her hanging off the side of the car. Rosado testified that her feet felt like she was being dragged over a "cheese grater" and that appellant's

6

speed "almost took [her] under the car." Appellant then stopped, said "Bitch, get off," and started driving again while slamming the car door on her arm multiple times. Kvien testified that Rosado appeared to be in danger of being "dragged under the car" and "run over" and Officer Erdman testified that Rosado could easily have been injured or killed. The jury could rationally conclude that driving at a high rate of speed while slamming Rosado's arm in the door was using the vehicle in a manner capable of causing death or serious bodily injury. *See Callison v. State*, 218 S.W.3d 822, 827 (Tex. App.—Beaumont 2007, no pet.) (holding defendant used vehicle as deadly weapon by driving away "while Trooper Callas was half inside the window").[4] We overrule appellant's first issue.

**Lesser-Included Offense**

Appellant argues in his second issue that the district court erred by refusing his request for an instruction on the lesser-included offense of misdemeanor theft.

We use "a two-step test to determine if an instruction on a lesser-included offense should be given." *Ortiz v. State*, 623 S.W.3d 804, 806 (Tex. Crim. App. 2021). The first step is to determine whether the requested instruction "pertains to an offense that is a lesser-included offense of the charged offense." *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). To satisfy the second step, there must be evidence "from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *Sweed*,

---

[4] Appellant argues that *Callison v. State* is distinguishable because the defendant "deliberately caused a collision by ramming his vehicle into a patrol car while an officer was hanging from the window." 218 S.W.3d 822, 827 (Tex. App.—Beaumont 2007, no pet.). But our sister court upheld the deadly weapon finding based on the defendant's entire use of the vehicle, not solely because he deliberately caused a collision. *See id*. ("Not only did Callison refuse to stop the car when Trooper Callas was hanging out of the driver's window, Callison rammed the patrol car and drove forward again while Trooper Callas was in a vulnerable position.").

351 S.W.3d at 68. The evidence must "establish the lesser-included offense as 'a valid rational alternative to the charged offense.'" *Id.* (quoting *Segundo v. State*, 270 S.W.3d 79, 90–91 (Tex. Crim. App. 2008)). The evidence "raising the lesser offense must be affirmatively in the record" and be "directly germane to the lesser-included offense." *Ritcherson v. State*, 568 S.W.3d 667, 671 (Tex. Crim. App. 2018). We consider all the evidence admitted at trial, and "anything more than a scintilla of evidence is adequate to entitle a defendant to a lesser charge." *Bullock*, 509 S.W.3d at 925.

The first step is met here because theft is a lesser-included offense of aggravated robbery. *See* Tex. Penal Code §§ 29.02, .03; *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994) ("No dispute exists that a completed theft is a lesser included offense of aggravated robbery.").

Turning to the second step, appellant argues that a jury could rationally "conclude the act of closing a car door on a person's arm was not a sufficient cause of an injury when the contact is caused by the victim maintaining a grip on the defendant." In other words, he argues that the jury could have chosen not to believe the testimony and evidence of what occurred after appellant reached his vehicle, rather than arguing that there was evidence that Rosado was uninjured. But it "not enough that jury may disbelieve crucial evidence pertaining to [a] greater offense." *Goad v. State*, 354 S.W.3d 443, 455 (Tex. Crim. App. 2011) (Alcala, J., concurring); *see Ritcherson*, 568 S.W.3d at 671 (noting that "a defendant is not entitled to a lesser-included offense instruction based on the absence of evidence"). For theft to be a "rational alternative" to robbery under these circumstances, *see Sweed*, 351 S.W.3d at 68, there must be evidence that would enable the jury to conclude that appellant did not cause Rosado bodily injury while in the course of committing theft, *see* Tex. Penal Code § 29.01(1).

8

In *Sweed*, the defendant was charged with aggravated robbery for stealing a nail gun from a construction site and then threatening the construction foreman with a knife. 351 S.W.3d at 64. At trial, evidence was presented that after stealing the nail gun, the defendant left the work area and went into an apartment where he hid the nail gun and changed clothes. *Id*. The foreman of the construction crew positioned himself outside the apartment building to wait for the police. *Id.* at 64–65. Between five and twenty minutes later, the defendant left the apartment empty-handed and wearing different clothing. *Id.* at 65. He walked across the parking lot where he spoke to another group of people for five to ten minutes. While walking back towards the apartment, the defendant recognized the foreman, and approached him while "waving a knife." *Id.* The court of criminal appeals determined that an instruction on the lesser-included offense of theft was appropriate because a jury could rationally conclude from the "fifteen to thirty minute delay and the intervening activities, including [the defendant's] act of leaving the apartment," that the defendant was no longer fleeing from the theft. *Id*. The record here, in contrast, shows that appellant dragged Rosado beside his car immediately after the theft and with no break in the chain of events. *See Castillo v. State*, No. 11-17-00218-CR, 2018 WL 3151490, at *4 (Tex. App.—Eastland June 28, 2018, no pet.) (mem. op., not designated for publication) (rejecting theft instruction because "[t]he record reflects that the assaultive act occurred immediately after the theft with no significant break in the chain of events"). In the absence of affirmative evidence that would enable a rational jury to conclude that appellant is guilty of theft instead of aggravated robbery, the district court did not err by refusing his requested instruction on the lesser-included offense of theft. We overrule appellant's second issue.

9

**Ineffective Assistance of Counsel**

Appellant argues in his final issue that his trial counsel was ineffective for not requesting an instruction on the lesser-included offense of robbery.

To prevail on his claim of ineffective assistance of counsel, appellant must demonstrate by a preponderance of the evidence that (1) his counsel's performance was deficient, and (2) the deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). The first prong requires appellant to show that his counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms. *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). Our review of counsel's representation is highly deferential, and we "indulge in a strong presumption that counsel's conduct was not deficient." *Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Id.* at 593. When there is an absence of evidence about counsel's reasons for the challenged conduct, a reviewing court should not find counsel ineffective "unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava,* 415 S.W.3d at 308 (quoting *Menefield*, 363 S.W.3d at 593).

Appellant argues that his trial counsel performed deficiently because, when "trial counsel is made aware that the court expects a request for a specific lesser included offense instruction, it is below the standard of care to ignore that signal and fail to make the request." The record is silent on the reason behind trial counsel's conduct, and the decision not to request

an instruction on a lesser-included offense could be strategic. *See Washington v. State*, 417 S.W.3d 713, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (explaining that it may be "reasonable trial strategy to decide to not request a charge on a lesser included offense"). Because the decision not to request the instruction could have been strategic, and counsel's conduct was not so outrageous that no competent attorney would have engaged in it, appellant has failed to show deficient performance. *See Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004) (deciding that decision to forgo any lesser-included instructions was reasonable strategy); *Washington*, 417 S.W.3d at 726 ("The decision to not request a lesser included could have been strategic; thus, appellant has failed to show deficient performance."). We overrule appellant's third issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed:   December 8, 2023

Do Not Publish