**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00421-CR**
_____

**ANDON NATHANIEL MEUCHEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-02-02015-CR**

**MEMORANDUM OPINION**

A jury convicted Appellant Andon Meuchel of the theft of property worth between $30,000 and $150,000, a third-degree felony, and sentenced him to five years in the Institutional Division of the Texas Department of Criminal Justice. Tex. Penal Code Ann. § 31.03(e)(5). In five points of error, Meuchel argues that the trial court erred in excluding one of his exhibits and in denying his motion for mistrial.

1

Meuchel further contends that the evidence was insufficient to support his conviction.

Finding no reversible error, we affirm Meuchel's conviction.

## Background

Shortly after midnight on February 14, 2022, a citizen reported a suspicious vehicle. When law enforcement authorities responded to the scene, they found Meuchel and another man with Meuchel's truck stopped at the side of the road and a skid steer on the trailer the truck was towing.[1] Upon further inquiry, the officers learned that the skid steer likely was stolen, and so they arrested Meuchel for the theft. We summarize below the evidence relevant to this appeal.

### A. Deputy Daniel Keen's Testimony

Keen, a patrol deputy for the Montgomery County constable's office, described his training and experience in the field of law enforcement. On the date of Meuchel's arrest, Keen was working the night shift, and was dispatched to the location of a reported suspicious vehicle. When he arrived, he saw Meuchel's truck and the trailer it had been towing at the side of the road. Although Keen described the truck as "an older model pickup truck that was heavily damaged," he noted that the skid steer on the trailer was in "very good condition[.]" Keen considered the

---

[1] A skid steer is a tracked vehicle used in construction and landscaping.

situation suspicious because the extensive development in the area had given rise to several thefts of construction materials and equipment.

Keen spoke with both Meuchel and the other man at the scene. Although the other individual cooperated with Keen's inquiry, Meuchel did not, and he refused to answer Keen's questions. Keen eventually identified Meuchel by determining the truck ownership in combination with Meuchel's statement that the truck belonged to him. Keen stated that "there had been previous incidents occurred with that truck and our defendant was –" when Meuchel's counsel objected and moved for a mistrial. The trial court denied the motion for mistrial, but upon counsel's request, did instruct the jury "to disregard the last answer of the witness in this case."

After authenticating and describing the still photographs of the scene, Keen testified that through both family connections and his own investigations of various thefts, he had become familiar with the construction business, including costs of equipment. In Keen's opinion, the 2019 Bobcat T770 skid steer in question was worth "somewhere in the ballpark of $100,000."

During the investigation into the situation, Keen and his supervisor identified the skid steer's owner (Sunstate Equipment Company) by the decal on its side. They then made the necessary calls to determine the skid steer's lessee (Key-Scape Construction) and its proper location: at a furniture store under construction off I-45 in Conroe. There was no indication that Meuchel was authorized to move the skid

3

steer off the construction site. Although Meuchel attempted to explain his possession of the skid steer by exhibiting an unreadable photograph of a document that Meuchel represented as a photograph of a repossession order for the skid steer. According to Keen, Meuchel did not have a purchase money lien or a document that showed there was unpaid rent due on the skid steer. Meuchel did have a key to the skid steer, but Keen testified that keys to equipment used in the construction business are often interchangeable.

## B. Scott Thourot's Testimony

Thourot, a superintendent for Key-Scape Construction, described his professional responsibilities as coordinating construction sites, including labor, material, and equipment. As a superintendent, Thourot was responsible for the furniture store construction site in Conroe, where the skid steer was supposed to have been at the time Meuchel was apprehended.

Thourot testified that Key-Scape usually rents the construction equipment it uses at its job sites because it is cost-effective to do so. When equipment is rented, Thourot explained, the rental company covers the costs of transporting the equipment to the party that rented it and the maintenance of the equipment. He noted that Key-Scape rents much of its equipment from Sunstate, and that Key-Scape has never incurred payment issues with these rentals.

With regard to this particular skid steer, Thourot stated that it had been at the job site in Conroe for only a few days before Meuchel's arrest, and Key-Scape therefore had not yet received a rental invoice for it. On February 14, 2022, law enforcement personnel contacted Thourot about the skid steer that they had located on Meuchel's trailer. He was uncertain how the officer identified Key-Scape as the skid-steer's lessee, but he surmised that Officer Keen contacted Sunstate from the information on the skid-steer, and that Sunstate might have then identified the skid steer from its serial number and provided the police with the information they needed to contact Thourot. After the Montgomery County authorities discovered Meuchel in possession of the skid steer, Thourot said they impounded it and refused to "let [Thourot] take it because they said it was on a stolen trailer." The following day, however, Sunstate delivered a replacement skid steer to Key-Scape's jobsite.

Thourot testified that he was generally familiar with the value of skid steer equipment, explaining that the value of an individual skid steer will vary with its age, condition, and market fluctuations. That said, Thourot estimated the value of the skid steer taken from Key-Scapes jobsite and that Deputy Keen recovered at between $70,000 and $80,000. Thourot acknowledged the possibility that a skid steer in an inoperable condition could be purchased for $2,500.

Thourot described the security measures present at the jobsite as of February 14, 2022, recalling that at the end of each workday, equipment keys were returned

5

to the foreman, and that the equipment was secured behind a locked gate. When Thourot returned to the job site later on February 14, 2022, the lock was broken and the gate was open, but he said the gate had been secured at the end of the workday on February 13th. According to Thourot, since the skid-steer was taken from Key-Scape's jobsite, the security precautions at the jobsite had been increased.

**C. James Knight's Testimony**

At the time of trial, Knight was in the sales department of Sunstate, but in February 2022, he worked as Sunstate's Houston area branch manager. Knight explained that in his capacity as branch manager, he was responsible for not only day-to-day duties such as payroll and personnel, but also for complying with the regulations of the Department of Transportation and OSHA.

Knight testified that Key-Scape was "one of [Sunstate's] better customers[,]" in that Key-Scape pays its bills on time and rarely has damage claims. On the infrequent occasion that a Sunstate customer does experience problems paying for rented equipment, Knight explained, Sunstate tries to work with its customers to avoid repossessing the equipment. According to Knight, when repossession is unavoidable, it is Sunstate's procedure to involve its corporate legal department and local law enforcement, and Sunstate performs the work itself rather than contracting this type of work to a third party.

In discussing the computer-generated invoice on the rental of the skid steer, which was admitted without objection as State's Exhibit 8, Knight noted that Exhibit 8 reflected the date, location, and cost of renting the skid steer, as well as the unit number, which matched the unit number shown in State's Exhibit 4, a photograph of the skid steer Meuchel was towing at the time of his arrest. Knight also confirmed Thourot's testimony that Sunstate replaced the original skid steer the next day, that when the Deputy Keen stopped Meuchel on February 14th, Key-Scape did not yet owe a rental payment on the skid steer, and that based on his experience in the equipment rental business, the skid steer that had been taken from Key-Scape's yard was worth approximately $75,000 to $85,000 in or around February, 2022. In addition, Knight confirmed that equipment such as skid steers are often stolen because they have universal keys and because unlike cars, "there's no [documented] title to them."

## D. Andon Meuchel's Testimony

Appellant Meuchel testified that he once worked in the debt collection business, and in February 2022, he was attempting to break into the commercial asset recovery field from his usual work, repossessing cars and trucks. According to Meuchel, he had a chance meeting with Nathan Fernandez in a convenience store on February 13, 2022. By Meuchel's account, he happened to overhear Fernandez say he needed at truck for a repossession, so he approached Fernandez and suggested

that Fernandez subcontract the job to him. That's when, according to Meuchel, Fernandez then gave Meuchel what Meuchel described as the "work order" and the key, which Meuchel testified he used after retrieving "[his] trailer" to "go recover the asset." Meuchel also testified that his Exhibit 3, a document entitled "WORK ORDER," which describes a "Bobcat T770," with a "Serial Number 183596," and listing a worksite as "Americas Furniture@ River Plantation/45 South, Houston, Texas," was "made at or near the time of the events that took place[,]" that it was "made by somebody with knowledge of the events[,]" and that it was kept in the normal course of Meuchel's asset-recovery business. Meuchel offered Exhibit 3 into evidence, but the trial court sustained the State's objection to the exhibit on the grounds that Meuchel was not an appropriate custodian of the Work Order, which was supposedly made by Fernandez, and that Meuchel lacked knowledge of how and when the document was created.[2]

Meuchel stated that when he arrived at the construction site, the skid steer was not secured behind a fence, a locked gate, or protected by similar measures; he expressly denied that he entered the construction site by cutting a lock on the gate. According to Meuchel, he loaded the skid steer onto his trailer and was in the process of towing it to Fernandez's home when his truck broke down. Meuchel explained that he called an acquaintance (not Fernandez) to help with the truck, but the two

---

[2] This exhibit is included in the record for appellate purposes.

men were unable to start the truck before Keen arrived. Meuchel further testified that he told Keen that he was repossessing the skid steer and that he showed Keen a photograph of the work order that he had on his phone, and that he possibly showed Keen a paper copy of the work order, but he wasn't sure he had it in his truck.

Meuchel testified that when he removed the skid steer from the jobsite where it was located, he believed he had the authority to repossess it. But Meuchel acknowledged that he did not verify that Sunstate had authorized the equipment to be repossessed because he did not want to complicate matters between Fernandez and his client. Meuchel also conceded that he did not inform law enforcement before he executed the work order despite his professed familiarity with the requirements that apply to the repossession of equipment.

### E. Nathaniel Fernandez's Testimony

Fernandez testified that although he lives near Meuchel, he does not really know him, and they have only a few mutual friends. Fernandez denied that he had had any business dealings with Meuchel, and further denied that he had been in the asset recovery/repossession business or that he had hired Meuchel to repossess the skid steer. Fernandez also denied having created the document Meuchel offered as his Exhibit 3 and testified that he did not have a good understanding of what a skid steer is.

9

**F. Other Evidence**

The documents admitted into evidence include multiple photographs of the scene where Meuchel was arrested, which show the truck, trailer, and skid steer. Another of the exhibits the trial court admitted into evidence as Exhibit 8 was the computer generated invoice issued by Sunstate to Key-Scape, which shows Key-Scape rented a "LOADER-TRACK SKID 2400-3400 LB 183596 T770, S/N: AT6321907," which was delivered to a job named "AMERICAN FURNITURE," and located at "12310 Interstate 45 N, Conroe TX 77384...." Defendant's Exhibit 3, which the trial court excluded from evidence, is a work order for repossessing a skid steer with a different serial number (183596) than the seral number on the computer-generated invoice the trial court excluded (AT6321907). Additionally, Exhibit 3 does not bear a legible signature.

**Analysis**

**A. Meuchel's Excluded Exhibit**

In his first and second points of error, Meuchel argues that the trial court abused its discretion by excluding his Exhibit 3, the work order that he claims authorized him to repossess the skid steer. In support of this contention, Meuchel states that this document was proved as a business record and that exclusion of Exhibit 3 denied him due process of law because the ruling prevented him from presenting a defense. We disagree.

10

### 1. Business Record

We use an abuse-of-discretion standard to review complaints about a trial court's decision to admit or to exclude evidence. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *see also Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). If the ruling was correct under any theory of law that applies to the case, the ruling will not be overturned on appeal. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). To establish that the trial court made an erroneous evidentiary ruling, the appellant must establish that the ruling "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

At trial and on appeal, Meuchel has argued that the trial court should have admitted Exhibit 3 because it was admissible as a business record pursuant to Rule 803(6).[3] Tex. R. Evid. 803(6). Although Meuchel did testify that Exhibit 3 was

---

[3] For evidence to be admissible under the business records exception to the hearsay rule requires the following:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted business activity;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and

prepared at or near the time of the events by someone with knowledge, and that it was kept in the regular course of his business, his testimony falls short of satisfying the business records exception to the hearsay rule. Tex. R. Evid. 803(6). Meuchel's argument fails to address Section (E) of the Rule. Tex. R. Evid. 803(6)(E). Meuchel's opponent, the State, demonstrated through its witnesses that Meuchel's Exhibit 3 was not trustworthy, and therefore was not an admissible business record. *Dupuy v. State*, 631 S.W.3d 233, 243 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (citing Tex. R. Evid. 803(6)(E) ("[T]he opponent of the evidence…ha[s] the burden 'to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.'")); *see also Bahena v. State,* 634 S.W.3d 923, 929 (Tex. Crim. App. 2021). Not only did two of the State's witnesses testify that there were no overdue rental payments on the skid steer, thus discrediting Meuchel's claim that he was repossessing it for unpaid rent. Fernandez testified that he knew nothing about the document he supposedly created; he further denied his own alleged involvement in the repossession. This evidence indicates "a lack of trustworthiness." Tex. R. Evid. 803(6)(E); *see Campos v. State*,

---

(E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Tex. R. Evid. 803(6).

12

317 S.W.3d 768, 778-79 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (holding that when the circumstances of preparation indicate a lack of trustworthiness, a trial court abuses its discretion in admitting the evidence) (citations omitted). Furthermore, the serial number on the skid steer that is on Exhibit 3 (the work order Meuchel claims he relied on) and the serial number on the skid steer rental invoice for the skid steer that Sunstate charged Key-Scape with renting differ. Given this evidentiary posture of the case, we cannot say that the trial court acted outside the zone of reasonable disagreement in concluding Exhibit 3 was not admissible as a business record. *See Sartin v. State*, 680 S.W.3d 663, 668 (Tex. App.—Beaumont 2023, no pet.) (explaining the abuse-of-discretion standard).

We further observe that Meuchel testified that he was hired to repossess the skid steer and that he had a work order to that effect. Meuchel's Exhibit 3, the work order on which Meuchel claims he relied, if admitted, would have been needlessly cumulative of his testimony. For that reason, it was not error for the trial court to exercise its discretion and exclude it. *See* Tex. R. Evid. 403; *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (upholding the trial court's ruling excluding cumulative evidence).

## 2. Due Process

On appeal, Meuchel argues that exclusion of his Exhibit 3 denied him due process of law by depriving him of his right to present a defense. Because he did not object on this basis at trial, he has not preserved error as to this argument, and we therefore decline to consider it. Tex. R. App. P. 33.1(a)(1)(A); *see Clark v. State,* 365 S.W.3d 333, 340 (Tex. Crim. App. 2012); *Callison v. State*, 218 S.W.3d 822, 826 (Tex. App.—Beaumont 2007, no pet.).

## B. Motion for Mistrial

Meuchel also claims that the trial court erred in denying his motion for mistrial. As with admissibility questions, we review a ruling on a motion for mistrial for an abuse of discretion. *See Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016). An appellate court considers only those arguments before the court at the time of the ruling. *See Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id*. "In determining whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event." *Pena v. State*, 554 S.W.3d 242, 251 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *see also Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (discussing a denied motion for mistrial in light of a granted motion to disregard). These three criteria:

14

prejudicial effect, curative measures, and certainty of conviction are discussed individually below.

In support of his motion for mistrial, Meuchel's counsel stated at trial that Keen's testimony "is alluding to prior law enforcement interaction, a prior offense of my client." On appeal, Meuchel contends that Keen clearly intended "to inform the jury that this was far from Appellant's first interaction with law enforcement." Reference to Keen's words, however, does not support Meuchel's position, either here or in the court below. Keen testified only that "there had been previous incidents occurred with that truck[.]" Even if Keen was about to mention Meuchel's prior arrests, Meuchel's counsel interrupted him and prevented Keen from finishing what he was about to say. Contrary to Meuchel's assertions, Keen did *not* testify that Meuchel was well-known to law enforcement, that Meuchel had a criminal record, or even that Meuchel had an unpleasant personality. Absent actual testimony describing Meuchel's "prior law enforcement interaction" and "prior offense," Meuchel's cannot demonstrate that he was harmed by Keen's statement that "there had been previous incidents [] with that truck." Assuming, however, that the jury understood Keen's testimony as referencing Meuchel's criminal history, we will address it accordingly.

In *Hawkins*, as here, the trial court denied the defendant's motion for mistrial, but instructed the jury to disregard the challenged testimony. *Id.* at 74. In reinstating

15

the defendant's sentence, the Court of Criminal Appeals balanced the three factors listed above. *Id*. at 77-85. Applying these criteria to the case at bar yields a similar result.

Keen's impending misstep was an isolated incident, and it was preempted by defense counsel's objection, and therefore was minimally prejudicial, if at all. *Id*. at 83-84 (distinguishing between isolated and repeated events). Considering that Keen did not state that Meuchel had a prior arrest or conviction, and further considering that Keen's inadvertent near disclosure was not repeated (with Keen or any other witness), whatever prejudice Meuchel may have suffered from Keen's reference to prior incidents with "that truck" had minimal or no effect on the outcome of the case.

As for the curative measures, the trial court instructed the jury to disregard Keen's statement, and the jury presumably did so. *See Adams v. State,* 156 S.W.3d 152, 157 (Tex. App.—Beaumont 2005, no pet.) (citing *Waldo v. State*, 746 S.W.2d 750, 752-53 (Tex. Crim. App. 1988) (holding that absent contrary evidence, a jury is presumed to have followed an instruction to disregard). Meuchel has provided no evidence, only unsupported argument, that the jury instruction was inadequate. Given the absence of evidence that the jury failed to follow the trial court's instruction, we cannot hold that it was inadequate.

Finally, even without Keen's testimony, Meuchel's conviction was assured by the other witnesses' testimony. Not only did both Thourot and Knight testify that

16

there were no rental payments due on the skid steer when Meuchel took it from Key-Scape's jobsite, Fernandez testified that he did not hire Meuchel to repossess it. As the finder of the facts, the jury was entitled to believe the State's witnesses and disbelieve Meuchel's claim that he was authorized to repossess the skid steer.

Considering that none of the three *Hawkins* factors favor Meuchel, we hold that the trial court did not abuse its discretion in denying Meuchel's motion for mistrial and overrule his third appellate point. 135 S.W.3d at 85.

## C. Sufficiency of the Evidence

Meuchel was charged with and convicted of theft of property valued at more than $30,000 and less than $150,000. In his final two points of error, he contends that the evidence against him was insufficient to prove not only the theft but the value of the property the jury concluded that he had stolen.

We review Meuchel's legal-sufficiency argument under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under *Jackson*, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis original); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In reaching a verdict, the jury is the judge of the credibility of witnesses and may assign the weight it chooses to assign to the testimony it hears in the trial. *Penagraph v. State*, 623

17

S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). On appeal, the reviewing court does not sit as a thirteenth juror and then substitute its judgment for the judgment the factfinder made based on the evidence it heard in the trial. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we must defer to the jury's responsibility to resolve the conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence the parties present to the jury in the trial. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the testimony the parties present to the jury conflicts, we presume the jury resolved that conflict in a manner that favors its verdict. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). To decide whether the inferences the jury made in reaching its verdict are reasonable, we examine the combined and cumulative force of the evidence after viewing it in the light that favors the verdict the jury reached. *Clayton*, 235 S.W.3d at 778. We treat direct and circumstantial evidence equally in our review. *Id*. "If a rational fact-finder could have so found, we will not disturb the verdict on appeal." *Fernandez v. State*, 479 S.W.3d 835, 838 (Tex. Crim. App. 2016).

As noted above, the jury was entitled to believe the witnesses who testified that Meuchel could not have been repossessing a skid steer for unpaid rent when the rent was not yet due as of February 14th. Knight testified that even if Sunstate were to repossess equipment for nonpayment, it would not have retained a third party for

18

that work but would have done the work itself. Because the jury was empowered to resolve conflicts in the evidence and to believe the evidence of Meuchel's guilt while rejecting Meuchel's contrary testimony, we will not disturb its verdict. Tex. Penal Code Ann. § 31.03(a); *Hooper*, 214 S.W.3d at 13 (permitting the jury to accept or reject the evidence presented).

Meuchel's argument that law enforcement authorities allegedly performed only a "superficial and incomplete[]" investigation of the situation does not render the State's evidence favoring Meuchel's guilt "not credible[,]" as Meuchel claims. The jury, not Meuchel's counsel, was tasked with determining credibility. *Hooper*, 214 S.W.3d at 13. Moreover, the duration and depth of an investigation do not necessarily indicate the accuracy of its conclusion. In this case, one or two telephone calls quickly told law enforcement authorities all they needed to know: the skid steer was supposed to be at a construction site, and not at the side of the road with Meuchel.

Meuchel also argues that the State has not refuted his contention that he believed he was legally repossessing the skid steer. We disagree. The State did not require direct evidence of Meuchel's deceit, but instead needed to show only that Meuchel possessed recently stolen property and that his proffered innocent explanation was "false or unreasonable." *Mottin v. State*, 634 S.W.3d 761, 769-70 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). The jury could have found that

19

Meuchel's explanation for having the skid steer was unreasonable, and based on the evidence, the factfinder was not obliged to accept it. *Id*. at 769. Instead, the jury could have permissibly applied its "common sense" and its "common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence[]" to evaluate the matter. *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). In view of Meuchel's claim that he obtained a repossession order from someone he barely knew in a chance meeting at a convenience store but then made no effort to verify whether he had the authority from the owner of the equipment to repossess the equipment, the jury was authorized to reject Meuchel's explanation as "false or unreasonable." *Mottin,* 634 S.W.3d at 769-70. We conclude the evidence was sufficient to support the jury conclusion that Meuchel was not authorized by either Key-Scape or Sunstate to remove the skid steer from Key-Scapes jobsite. *Id.*

Insofar as the evidence of the skid steer's value is concerned, Meuchel argues that "[t]here is nothing in the record that shows that the skid steer in question would not be worth $2500 or any other amount less than $30,000." However, three witnesses, including the skid steer's owner, testified to an approximate value for this particular skid steer, and to a range of probable values for skid steers, generally. Thourot, the owner, testified that "this specific skid steer" was worth $70,000 to

20

$80,000.[4] Although this testimony does not provide an exact figure, it enables the jury to find that the skid steer's value exceeded $30,000 without exceeding $150,000. Meuchel's reliance on *Sanchez v. State* is misplaced, because even though it permits Meuchel to challenge the property's value for the first time on appeal, the opinion favors the State: the *Sanchez* court upheld a conviction despite minimal evidence of value. 521 S.W.3d 817, 821-22 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

The *Sanchez* court observed that an owner's credible testimony of his property's worth "is sufficient proof for a jury to determine the property's value[.]" *Id.* at 820 (citing *Sullivan v. State*, 701 S.W.2d 905, 909 (Tex. Crim. App. 1986)). *Sanchez* also allowed a jury to base its assessment of value on a police officer's research. *Id.* at 821-22. Applying this standard to the instant case reveals that it was reasonable for the trial court to conclude that Keen and Knight had sufficient knowledge to qualify under Rule 702 to provide the jury with an estimate of the skid steer's value based on their respective experience with that type of equipment involved. Tex. R. Evid. 702 (permitting testimony by a witness who has gained expertise through knowledge, skill, experience, training, or education). Keen and Knight, like Thourot, placed the skid steer's value between $30,000 and $150,000,

---

[4] "Owner" may be defined as one having a "greater right to possession of the property than the actor[,]" a definition that includes Thourot. Tex. Penal Code Ann. § 1.07(35)(A).

and the jury could have relied on the testimony of these witnesses in reaching its verdict. *See Sanchez*, 521 S.W.3d at 821-22. In short, the jury had before it the testimony of the skid steer's owner and the opinions of two individuals with sufficient experience in the construction industry who were familiar with the value of skid steers to support the jury's verdict that the skid steer Meuchel took was worth more than $30,000.

Because the evidence is sufficient to support the jury's verdict, we overrule Meuchel's final two issues.

## Conclusion

Because the trial court did not err in excluding Meuchel's Exhibit 3 or in denying his motion for mistrial, and because the evidence is sufficient to sustain Meuchel's conviction, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on March 28, 2024
Opinion Delivered May 22, 2024
Do Not Publish

Before Golemon, C.J., Horton and Wright, JJ.

22